IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES CHESTER MIZE, JR., §<br>*Plaintiff*, §<br>§<br>v.  §<br>§<br>NATHANIEL QUARTERMAN, §<br>*Defendant*. § | CIVIL ACTION NO. H-07-3507 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se*, seeks injunctive relief prohibiting the staffing of female laundry managers in the male prisoner shower house of the Texas Department of Criminal Justice Ramsey Unit. Defendant filed a motion for summary judgment (Docket Entry No. 40), to which plaintiff responded. (Docket Entries No. 45, 46, 47.) Defendant then filed a reply to plaintiff's response (Docket Entry No. 49), to which plaintiff further responded (Docket Entry No. 53).

After careful consideration of the pleadings, the record, the motion, the reply and responses, and the applicable law, the Court **DENIES** the motion for summary judgment for the reasons that follow.

### I. Background and Claims

Plaintiff, an inmate of the Ramsey Unit, alleges that female laundry managers are assigned to manage male inmate laundry workers inside the men's shower house. He complains that naked male inmates, standing in line to receive clean clothing and towels from fellow inmate laundry workers, are visible to a female laundry manager if she were to look

out through the mesh screen over the waist-high counter separating the laundry workers from the inmates. Plaintiff posits that if a male officer were to work in a female inmate unit shower passing out clothing to nude female inmates, "he would be placed in jail that day." *Id.* He requests injunctive relief ordering prison officials to remove all female laundry managers from the men's shower house. The Court construes plaintiff's allegations as raising claims for violation of his rights to privacy and equal protection under the Fourth, Eighth, and Fourteenth Amendments.[1]

## II. Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are

---

[1] Plaintiff states in his response to the motion for summary judgment that he pleaded a First Amendment claim for violation of religious exercise. Defendant argues that no such claim was pleaded. A review of the complaint fails to reveal the pleading of a First Amendment religious exercise claim.

insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

### III. Analysis

Because plaintiff initially complained that female laundry "officers" were assigned to the men's shower house, defendant filed a motion for summary judgment arguing that, under *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002), the presence of female prison guards for security reasons on those occasions when male prisoners are naked or showering is not a constitutional violation. (Docket Entry No. 40, p. 2.)

In support of the motion, defendant submitted the affidavit of Charles Bell, Assistant Director of Security Systems for the Texas Department of Criminal Justice. In his affidavit, Bell testified that,

> Due to the design of the shower rooms at the older units, such as the Ramsey Unit, the offenders are routinely escorted nude in groups into the shower room. After they finish their shower and dry off, they proceed to a 'necessity line' where they are issued clean clothes and get dressed. This 'necessity line' is usually in the same room and only a short distance away. Only in extraordinary situations are female correctional officers assigned to the shower. However, there is always the possibility that a female could pass by on her way to an assignment or other duty in that area.
>
> In the newer units, such as Michael and Connally, it is less likely that a female will view an inmate in the shower area. There is a door that covers the mid-torso area of the showering/dressing males. However, there are female officers assigned to positions as rovers, who while working in the cellblocks may at times be in a position to observe males entering/exiting the showers.
>
> Although, as noted above, TDCJ makes every attempt to reduce the likelihood that a male inmate will be viewed naked, there are few alternatives which

3

> would completely eliminate the possibility that female officers may at times view offenders during the shower process. Women account for about 38.1% of the TDCJ security workforce. At any male-populated unit, the female officers are typically assigned to any duty station that a male officer would work except for the shower areas. These duty stations would include desk assignments, library, education, rover, picket and field force. Unless a critical or emergency situation arose, only male officers are assigned to certain jobs such as the shower area. Females are assigned to the shower area only in extraordinary circumstances and when no reasonable alternative exists.
>
> Additionally, allowing all offenders to wear boxer shorts in the shower area and necessity line would pose a tremendous security problem, allowing more chances for contraband to be exchanged, or weapons to be concealed, in this small, enclosed space. Also, because offenders are more vulnerable while in the shower, it is important for security to be present during showers and before and after showers.

(Docket Entry No. 40, Exhibit A.)

In his response to defendant's motion for summary judgment, plaintiff stated that his complaint lies not with the use of female security guards in the men's shower house, but with the use of female laundry managers to supervise male inmate laundry workers in the men's shower house. (Docket Entries No. 45, 47.) In reply to this clarification, defendant submitted an affidavit of David Turrubiarte, Assistant Warden at the Ramsey Unit, who testified as follows:

> The general population offenders in the Ramsey Unit shower in group, or 'gang' showers. These showers are housed in a separate building from the main building and inmates have to walk outside to get to the bathhouse. The policy is for all general population inmates to shower once a day.
>
> While offenders are in the shower area, they are supervised by a correctional officer for security purposes. Before showering, the naked offenders wait in a necessity line to exchange their dirty clothes for a towel and a clean change

4

of clothes from laundry workers in the adjacent laundry area. The necessity line is the in the same room as the showers. There is also a partial wall approximately four feet high in front of the showers.

The laundry area is separated from the shower room by a counter that is approximately four feet high and two and a half feet wide. There is also a steel mesh screen between the ceiling and the counter top. There is a pass through hole in the screen so that offenders can receive the towel and fresh clothes.

The laundry area is staffed by offender workers who organize the laundry and distribute clean towels and clothes to offenders. These offender workers are supervised by a laundry manager. The laundry manager's job duties include supervising the offender workers in the laundry area to ensure the orderly distribution and collection of clothing and towels. The laundry manager's job duties do not include surveillance of the offenders in the shower. The offenders in the shower are supervised by the security officer.

The Ramsey Unit employs seven laundry manager III's (sic) and one laundry manager IV, a supervisor. Three of these laundry manager III's (sic) are female. These laundry managers receive the same training as correctional officers and wear the same uniforms.

The only opportunity that a laundry manager would have to see a naked male inmate in the shower area would be through the steel mesh and over the counter. If an inmate was standing at the counter to receive his clean towel and change of clothes, he would only be visible from the waist up because his lower half would be obscured by the counter. Any other views of naked inmates by a laundry manager would be incidental and from a distance.

Inmates can hide contraband in clothing. Inmates are also vulnerable while showering because soap and steam may obscure their view of those around them. The group showers are [in] a crowded area that is difficult to supervise. To maintain security, it is necessary that inmates be naked while in the shower area.

Alternative shower arrangements would either be prohibitively expensive, such as constructing a new shower building, or would compromise security such as allowing inmates to shower in their boxer shorts. It would also be a burden on unit staffing to reassign female laundry workers from the shower buildings.

(Docket Entry No. 49, Exhibit A.)

In his own affidavit submitted in opposition to defendant's reply, plaintiff testified, in relevant part, to the following:

> General population offenders on the Ramsey Unit are called to showers in groups of approximately thirty (30) after approximately five minute intervals.
>
> Offenders enter the shower house fully clothed.
>
> A line is formed for the necessity room window.
>
> Offenders are required to remove all their clothing before they arrive at the dirty clothes window.
>
> At the dirty clothes window the Laundry Manager (LM) determines whether all clothes are turned in.
>
> The LM then instructs the Laundry workers to issue clothes, one-for-one, for each item turned in, plus a towel.
>
> The LM's view is not obstructed by the cyclone fence screen that is located on the outside edge of the counter and goes to the roof.
>
> The LMs often leave the necessity room through the only door, which leads to the showers.
>
> The LMs, both male and female, often converse with the security officer while in the shower area.
>
> The view of the dressing area from the necessity room cannot be considered obstructed.

(Docket Entry No. 53, Exhibit A.)

Thus, the uncontested evidence establishes that the female laundry managers work in the necessity room inside the men's shower house, behind a waist-high counter fronted by

a see-through mesh or fence-like screen. The exchange of clothing and towels occurs between the inmate and the laundry workers through an opening in the mesh screen along the counter. The inmates are unclothed when they approach the counter window. The female laundry managers are responsible for ensuring that all used clothing is turned in; they are not responsible for actually inspecting, viewing, or providing security for, the male inmates. If the laundry managers view the naked male inmates while not behind the screened counter, it is incidental to their work duties while entering or exiting the building or room.

The parties agree that, under Fifth Circuit precedent, no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of the female guards is required to protect a legitimate government interest, such as maintaining security at a correctional facility. *Oliver*; *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992). However, the female laundry managers here do not provide inmate security; rather, they supervise inmate employees working in the laundry area, as shown by the following:

> The laundry area is staffed by offender workers who organize the laundry and distribute clean towels and clothes to offenders. These offender workers are supervised by a laundry manager. The laundry manager's job duties include supervising the offender workers in the laundry area to ensure the orderly distribution and collection of clothing and towels. The laundry manager's job duties do not include surveillance of the offenders in the shower. The offenders in the shower are supervised by the security officer.

(Docket Entry No. 49, Exhibit A.)

Plaintiff's allegations do not raise a cognizable Eighth Amendment claim. *See, e.g., Sinclair v. Stalder*, 78 Fed. Appx. 987 (5th Cir. 2003) (holding that the use of female officers

to supervise the living areas of a male inmate unit occasions nothing more than a brief interruption or inconvenience, rather than the unnecessary and wanton infliction of pain required for a constitutional violation). Nor does plaintiff meet his burden to establish a Fourteenth Amendment equal protection claim by coming forward with summary judgment evidence showing that male and female prisoners are similarly situated. *Id., Yates v. Stalder*, 217 F.3d 332, 334-35 (5th Cir. 2000).

Plaintiff's remaining Fourth Amendment privacy claim is analyzed under the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, the validity of a prison regulation or practice turns on whether the regulation or practice is "reasonably related to a legitimate penological interest." *Id.* at 89. As stated by the Fifth Circuit in *Sinclair*,

> This court has previously determined that a state has a legitimate interest in maintaining security and pursuing equal employment opportunity practices. Considering the summary judgment evidence, and in view of [plaintiff's] failure to suggest ready and effective alternatives to the state's policy, which is his burden, we have determined that the state's policy of using female officers to supervise the living areas of [plaintiff's] prison unit is reasonably related to legitimate penological objectives, including flexibility in security personnel staffing and equal employment opportunity. Given the evidence presented, [plaintiff's] right to privacy, which is at best minimal, must yield to the state's legitimate interest.

79 Fed. App. at 989 (citations omitted). Thus, the controlling issue here is not whether the female laundry managers can see the naked male inmates standing in the necessity line, but whether the Ramsey Unit's use of female laundry managers in the men's shower house is reasonably related to legitimate penological objectives.

Even though the Fifth Circuit recognizes that an inmate's right to privacy "is minimal, at best," *Oliver*, 276 F.3d at 745-46, an intrusion on an inmate's right to bodily privacy must be balanced under *Turner* against the State's interests. The Supreme Court has mandated a lower standard of review for "prison regulations claimed to inhibit the exercise of constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 344 (1987). This Court is to give great deference to prison administrators' judgments regarding prison security and operations, and a regulation need only be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Four considerations determine whether such "reasonable relation" exists: whether the regulation has a valid, rational connection to the governmental interest put forth to justify it; whether the inmate has alternative methods for exercising his constitutional right; the impact that accommodation would have on other inmates or prison staff; and, whether the existence of easy, rather than difficult, alternatives demonstrates that the regulation or policy is an "exaggerated response" to a perceived penological interest. *Id.*, at 89-90.

The parties here have paid scant attention to the essential *Turner* considerations. Defendant's reliance on cases upholding the use of female security officers in male inmate prison units is inapposite, as defendant concedes that the female laundry managers have no prison security function. Nor is it determinative, contrary to plaintiff's position, that the female laundry managers' view of the naked male inmates is only impeded, not obstructed. As the *Turner* factors have not been adequately addressed in the instant summary judgment

9

proceeding, the Court is unable to determine whether the prison's practice of using female laundry managers in the men's shower house is reasonably related to a legitimate penological interest so as to prevail over plaintiff's limited constitutional right to privacy.

## IV. Conclusion

The motion for summary judgment (Docket Entry No. 40) is **DENIED**. Defendant is **ORDERED** to file an amended motion for summary judgment, by **APRIL 17, 2009**, in conformity with this Court's memorandum opinion and order. Plaintiff shall have thirty days thereafter to file a response to the amended motion.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 3rd day of March, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE