IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES CHESTER MIZE, JR., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3507 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a state inmate proceeding *pro se*, seeks injunctive relief prohibiting the staffing of female laundry managers in the male prisoners' shower house at the Ramsey Unit. Defendant filed an amended motion for summary judgment (Docket Entry No. 64), to which plaintiff responded. (Docket Entry No. 65.)

After careful consideration of the pleadings, the record, the motion and response, and the applicable law, the Court **GRANTS** the amended motion for summary judgment and **DISMISSES** this case for the reasons that follow.

**I. Background and Claims**

Plaintiff, an inmate of the Ramsey Unit, alleges that female laundry managers are assigned to manage male inmate laundry workers inside the male inmates' shower house. He complains that naked male inmates, standing in line to receive clean clothing and towels from fellow inmate laundry workers, are visible to a female laundry manager if she were to look out through the mesh screen over the waist-high counter separating the laundry workers

from the inmates. He asserts that this violates his Fourth Amendment privacy protections, and seeks injunctive relief ordering prison officials to remove all female laundry managers from the male inmates' shower house at the Ramsey Unit.

## II. Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

## III. Analysis

A state offender's Fourth Amendment privacy protections are greatly limited in context of prison situations. "A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore v. Carwell*, 168 F.3d. 234, 236-37 (5th Cir. 1999) (citations omitted). The Supreme Court recognizes that the Fourth Amendment

privacy rights of prisoners are extremely circumscribed by the need for prisons to maintain order and security. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). A prisoner's expectation of privacy under traditional Fourth Amendment provisions must always yield to the paramount interest in institutional security. *Id.* at 527-28.

Plaintiff's Fourth Amendment privacy claim regarding the prison's staffing policy and practice for female laundry managers is analyzed under the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, the validity of a prison regulation or practice turns on whether the regulation or practice is "reasonably related to a legitimate penological interest." *Id.* at 89. Even though the Fifth Circuit recognizes that an inmate's right to privacy "is minimal, at best," *Oliver v. Scott*, 276 F.3d 736, 745-46 (5th Cir. 2002), an intrusion on an inmate's right to bodily privacy must be balanced under *Turner* against the State's competing interests.

The Supreme Court has mandated a lower standard of review for "prison regulations claimed to inhibit the exercise of constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 344 (1987). This Court is to give great deference to prison administrators' judgments regarding prison security and operations, and a regulation need only be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. As stated by the Fifth Circuit,

> This court has previously determined that a state has a legitimate interest in maintaining security and pursuing equal employment opportunity practices. Considering the summary judgment evidence, and in view of [plaintiff's] failure to suggest ready and effective alternatives to the state's policy, which is his burden, we have determined that the state's policy of using female officers to supervise the living areas of [plaintiff's] prison unit is reasonably related to legitimate penological objectives, including flexibility in security personnel staffing and equal employment opportunity. Given the evidence presented, [plaintiff's] right to privacy, which is at best minimal, must yield to the state's legitimate interest.

*Sinclair v. Stalder*, 78 F. App'x 987, 989 (5th Cir. 2003) (citations omitted) (unpublished). Thus, the controlling issue in the instant case is not whether the female laundry managers can see the naked male inmates standing in line, or that there is no "need" to assign female laundry managers to the male inmates' shower house, but whether the prison's use of female laundry managers in the male inmates' shower house is reasonably related to a legitimate penological objective.

Four considerations determine whether such "reasonable relation" exists: whether the regulation has a valid, rational connection to the governmental interest put forth to justify it; whether the inmate has alternative methods for exercising his constitutional right; the impact that accommodation would have on other inmates or prison staff; and, whether the existence of easy, rather than difficult, alternatives demonstrates that the regulation or policy is an "exaggerated response" to a perceived penological interest. *Turner*, 482 U.S. at 89-90. The Fifth Circuit recognizes that "rationality is the controlling factor, and a court need not weigh

4

each factor equally." *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).

Defendant argues that the use of female laundry managers in the male inmates' shower house is reasonably related to legitimate penological interests in safety and security that outweigh plaintiff's minimal Fourth Amendment right to privacy. In support, defendant submits the affidavit of Tony D'Cunha, who testifies as follows:

> I am currently employed as the Assistant Director for Laundry, Food, and Supply for the Texas Department of Criminal Justice ('TDCJ'). I have held this position for the last four years. My office is at TDCJ headquarters in Huntsville, Texas. I have worked for TDCJ for over 24 years. I began as a correctional officer and also have significant experience in the industrial side of TDCJ's operations. As part of my job duties, I supervise over 1800 employees statewide.
>
> Laundry managers in TDCJ receive the same training as correctional officers. They also wear the same gray uniforms, though with a different patch to indicate that they are laundry managers.
>
> The reason that laundry managers receive the same training as other security officers is because a large component of their job involves inmate security as well as laundry functions. Laundry managers are working with inmates inside the prison on a daily basis. Inmates that work in the laundry are convicted felons and can come from all but the most restrictive custody levels. Inmates that work in the laundry are fully clothed.
>
> While laundry managers do not perform security functions in the shower, they do perform security functions in the laundry. For this reason, laundry managers are trained in security procedures as well as in laundry functions. Inmates that (sic) work in the laundry must be supervised because they have access to many items that could be used as weapons. There are a number of chemicals, including bleach, used in the laundry process that could blind or burn another person if thrown. Because the laundry also repairs clothing, there are scissors, sewing machines, needles, and other tools that must be used by

5

> the inmates in their work. The laundry managers must supervise the inmates to make sure that these tools are used in a safe manner and that all tools are accounted for at the end of each shift.
>
> TDCJ also suffers from a shortage of staff, including laundry managers. Security officers could not be reassigned to the laundry because laundry managers undergo additional training specific to laundry tasks. Laundry managers must be trained in inventory control, the use and measure of dangerous chemicals such as bleach, [laundry] sour, and detergents, how to regulate the pH of the water used in the cleaning process, the proper use of laundry tools, and the use of steam presses.
>
> It would be difficult to reassign female laundry managers because of the shortage of staff. Also, we are required to provide equal employment opportunities for men and women. Removing female managers would be a burden on unit staffing since that would create vacancies and TDCJ is currently understaffed.

(Docket Entry No. 64, Exhibit A, pp. 1-2.) Accordingly, defendant presents probative summary judgment evidence demonstrating that the female laundry managers serve a security function in the male inmates' shower house. It is well established that TDCJ has a legitimate penological interest in maintaining security for prisoners and staff. *See*, *e.g.*, *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009). The use of female laundry managers in the male inmates' shower house has a valid, rational connection to the promotion of that legitimate penological interest. Defendant further presents probative summary judgment evidence that TDCJ is required to provide equal employment opportunities for both men and women. The Fifth Circuit has recognized that "a state has a legitimate interest in maintaining

security and pursuing equal employment opportunity practices." *Sinclair*, 78 F. App'x at 989.[1]

Further, plaintiff fails to show a lack of alternative methods for exercising his constitutional right to privacy; indeed, the only privacy intrusion made the basis of this lawsuit is the momentary and incidental loss of his privacy should a female laundry manager view him naked while not behind the screened counter. Plaintiff agrees that when he is standing behind the counter directly interacting with shower house workers (who are fellow inmates), he is shielded from the waist down. He also asserts that the female laundry managers are in the male inmates' shower house for only about three hours every ten-hour shift. (Docket Entry No. 65, p. 7.)

Regarding the third *Turner* factor, it is clear from D'Cunha's affidavit that removing all female laundry managers from the male inmates' shower house would cause a significant and negative impact on prison resources. D'Cunha testified that, "Removing female managers would be a burden on unit staffing since that would create vacancies and TDCJ is currently understaffed." (Docket Entry No. 64, Exhibit A, p. 2.) *See also Scott*, 276 F.3d at 746 ("Third, requiring only male guards to supervise inmates at night and in the showers would have the ripple effect of forcing [the prison] to reassign a high percentage of its prison staff.").

---

[1] As noted by defendant, TDCJ agreed, and was ordered, to provide employment " to women on an equal basis with men" in the consent decree entered in *Coble v. TDCJ*, C.A. No. H-77-707 (S.D. Tex. 1988.)

7

Moreover, the record does not evince the existence of "easy, rather than difficult, alternatives" to having male prisoners stand naked in the shower line potentially and temporarily observable by female laundry managers when not behind the counter. As already noted, reassigning all female laundry managers to other job duties would burden unit staffing by creating more vacancies in an already understaffed prison system. Nor would allowing male inmates to wear boxer shorts during showering constitute a reasonable alternative; as stated by D'Cunha in his affidavit, "Allowing inmates to wear boxer shorts in the shower would pose tremendous security concerns, as weapons could be hidden in the boxer shorts." (Docket Entry No. 64, Exhibit A, p. 2.)

In response to this analysis of the *Turner* factors, plaintiff argues that, while security is a valid penological interest, it does not require the use of *female* laundry managers in the male inmates' shower house. Plaintiff's assertion ignores the *Turner* factors, and provides no support for his Fourth Amendment claim. Nor is it material that log books purportedly show an absence of women guards working at the Unit's back gates since 1988, or that plaintiff personally believes TDCJ is not hiring men and women in equal numbers. Regarding the second *Turner* factor, plaintiff argues that, "[J]ust over sixty Muslim inmates are allowed to shower with their boxer shorts on because of religious modesty requirements, why can't i (sic)?" (Docket Entry No. 65, p. 6.) That the Ramsey Unit warden may have elected to exercise his discretion to allow male Muslim inmates to shower in boxer shorts under certain circumstances does not negate defendant's evidence that allowing inmates to

8

shower while wearing boxer shorts poses tremendous security concerns. Plaintiff presents no probative summary judgment evidence showing that allowing all male inmates to shower in boxer shorts would not pose a security concern.

In response to the fourth *Turner* factor, plaintiff "thinks it would be a minimal intrusion on Defendants to change policy and have female laundry managers stay out of the male inmate shower houses while male inmates are in the nude, showering and dressing." (Docket Entry No. 65, p. 7.) Plaintiff's personal thoughts on this issue, however, do not constitute probative summary judgment evidence. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Further, a prison administrator's decisions and actions regarding safety and security in the prison context are entitled to great deference. *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994). Plaintiff provides this Court no grounds for withholding that deference.

In short, the record establishes that the defendant's use of female laundry officers in the male inmates' shower house is reasonably related to a legitimate penological interest in promoting and maintaining prisoner and staff security. Plaintiff presents no probative summary judgment evidence raising a genuine issue of material fact precluding summary judgment, and no Fourth Amendment violation is shown.[2]

The Court notes that plaintiff filed a surreply in this proceeding without seeking or obtaining leave of court. (Docket Entry No. 71.) Neither the local rules of this Court nor the

---

[2] The Court dismissed plaintiff's equal protection and cruel and unusual punishment claims in its order of March 3, 2009. To any extent necessary, the Court reaffirms the dismissal of those claims for the reasons set forth in that order.

Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right. Accordingly, the surreply (Docket Entry No. 71) is **STRICKEN FROM THE RECORD** as filed without leave of Court. Regardless, the Court has reviewed the surreply and finds that it fails to raise a genuine issue of material fact precluding summary judgment. Any requests for discovery set forth in the surreply are **DENIED AS UNTIMELY**.

### IV. Conclusion

Although this Court might well reach a different outcome if considering this case in the absence of controlling precedent, that is of no consequence. The motion for summary judgment (Docket Entry No. 64) is **GRANTED**, and this lawsuit is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 18th day of February, 2010.

*[signature: Keith P. Ellison]*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE